UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| STEVEN JAMES TURBEVILLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:18-CV-215-TAV-DCP |
| | ) | |
| DAVID RAY, | ) | |
| CLAIBORNE COUNTY, and | ) | |
| CLAIBORNE COUNTY | ) | |
| DETENTION CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's pro se complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 [Doc. 1] and motion for leave to proceed *in forma pauperis* [Doc. 3]. For the reasons discussed below, Plaintiff's request to proceed *in forma pauperis* [Doc. 3] will be **GRANTED**, Defendant Claiborne County Detention Center will be **DISMISSED** as a Defendant, and Plaintiff will be granted leave to file an amended complaint.

**I.     FILING FEE**

Under the Prison Litigation Reform Act ("PLRA"), any prisoner who files a complaint in a district court must tender the full filing fee or file (1) an application to proceed *in forma pauperis* without prepayment of fees and (2) a certified copy of his inmate trust account for the previous six-month period. 28 U.S.C. § 1915(a)(2). On June 15, 2018, the Court entered an Order directing Plaintiff to submit a copy of his trust-fund account statement for the previous six months [Doc. 5]. Plaintiff then filed the required account

statement [Doc. 6], and it appears from his application that he lacks sufficient financial resources to pay the $350.00 filing fee. Accordingly, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 3] will be **GRANTED** and, pursuant to 28 U.S.C. § 1915, the Clerk is **DIRECTED** to file this action without the prepayment of costs or fees or security therefor as of the date the Complaint was received.

Because Plaintiff is in custody at the Claiborne County Detention Center ("CCDC"), he is herewith **ASSESSED** the civil filing fee of $350.00. Pursuant to 28 U.S.C. § 1915(b)(2), the custodian of Plaintiff's inmate trust account at the institution where he now resides is directed to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, twenty percent (20%) of the Plaintiff's preceding monthly income (or income credited to the Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Memorandum to the CCDC to ensure that the custodian of Plaintiff's trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee. The Clerk is **DIRECTED** to forward a copy of this Memorandum to the Court's financial deputy.

## II. BACKGROUND

Plaintiff filed this complaint on February 12, 2018, against Defendants Ray, Claiborne County, and the CCDC for alleged violations of his constitutional rights occurring while he was in custody at the CCDC [Doc. 1 p. 1]. Plaintiff brings suit against Defendant Ray, the Sheriff of Claiborne County, in both his individual and official capacity [*Id.* at 2].

The substance of Plaintiff's complaint alleges, in its entirety:

> Since I was arrested and held at the Claiborne County Detention Center on November 8, 2017, I have been repe[a]t[e]dly refused access to a law library so I can prepare for my case. Since I was arrested and brought to the Claiborne County Detention Center I have been subjected to cruel and unusual punishment because I have not been able to go outside for fresh air or recreation. I am not on any type of punishment and I have no access to a commissary.
>
> I have not been provided with proper medical are since I was arrested and brought to the Claiborne Co. Detention Center. Specific[a]lly when I arrived here, my blood pressure was taken and I was placed on blood pressure medicine by the nurse and I do not have high blood pressure. I am forced to take the medicine due to policy or I am locked down for 24 hrs. after refusing the medicine. I have had an ear infection since I arrived here and I still have not seen a dr. for it or my "high blood pressure."
>
> The nurses name is Terresa Johnson and the Sheriff's name is David Ray. They are the people who have violated my civil rights, along with Jail Administrator Larry Martin. I was told by all officers that there is no law library at this jail. Also, Ofc. Smith on night shift opened my legal mail and took it as soon as he opened it.

[*Id.* at 4]. Plaintiff requests compensatory and punitive damages for the alleged violations of his civil rights [*Id.* at 7].

## III. ANALYSIS

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999) ("Congress directed the federal courts to review or 'screen' certain complaints *sua sponte* and to dismiss those that failed to state a claim upon which relief could be granted [or] . . . sought monetary relief from a defendant immune from such relief."). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that they were deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, Plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).

### B. Improper Defendant

As an initial matter, the CCDC is a building, and not a suable entity within the scope of 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688–90 (finding that in a suit against a local government unit, only "bodies politic" are "persons" who are amenable to be sued under § 1983); *Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"); *McIntosh v. Camp Brighton*, No. 14–CV–11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are improper defendants under § 1983); *see, e.g.*, *Boldon v. Claiborne County Detention Center, et al.*,

5

No. 3:16-cv-441, 2017 WL 4127022, at *3 (E.D. Tenn. Sept. 18, 2017) (holding "any allegations asserted against the CCDC fail to state a claim for relief" under § 1983). Therefore, Plaintiff has failed to state a claim upon which relief may be granted under § 1983 against the CCDC, and the Claiborne County Detention Center will be **DISMISSED** as a Defendant.

    C.    **Access to Court Claims**

Plaintiff claims that he was denied access to the law library while in custody at the CCDC. It is well established that prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, any inmate who claims he was denied such access must "demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To demonstrate that the lack of access has hindered his efforts to pursue a legal claim, an inmate must establish that the prison official impeded his pursuit of a non-frivolous post-conviction or civil rights action, i.e., a denial or dismissal of a direct appeal, habeas petition, or civil rights case seeking to vindicate basic constitutional rights. *Id.* at 348–54; *see also Pilgrim v. Littlefield*, 92 F.3d 414, 415–16 (6th Cir. 1996) (noting a plaintiff must show prejudice, such as the late filing of a court document or the dismissal of a non-frivolous claim resulting from the inadequate access).

Here, Plaintiff has not made any such showing because he has failed to plead facts, which, if taken as true, show that the lack of access to the law library hindered his efforts to pursue non-frivolous legal claims. *See Hadix v. Johnson*, 182 F.3d 400, 404 (6th Cir.

6

1999) ("An inmate must demonstrate an 'actual injury,' which, the Court said, cannot be shown 'simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense.'") (quoting *Lewis*, 518 U.S. at 351); *see, e.g.*, *Harbin–Bey v. Rutter,* 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."). Ultimately, the right of access to the courts has never been equated with unlimited access to legal materials and assistance. *See Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir. 1985); *see, e.g.*, *Lewis*, 518 U.S. at 351 (holding a sub-par library or legal assistance program does not establish relevant actual injury). Therefore, Plaintiff's complaint fails to set forth facts, which, even if liberally construed, support a claim for the denial of meaningful access to the courts based upon a lack of access to the law library.

Plaintiff also alleges that his legal mail was opened by "Ofc. Smith" on one occasion [Doc. 1 p. 3]. Prisoners maintain a First Amendment right to send and receive mail. *See Procunier v. Martinez,* 416 U.S. 396, 408–09 (1974), *overruled in part on other grounds by Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989). An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier,* 417 U.S. 817, 822–23 (1974).

Ultimately, Plaintiff's accusation that his mail was searched on one occasion is insufficient to state a claim for a violation of his constitutional rights. A single, isolated interference with Plaintiff's mail does not establish a constitutional violation. *See Johnson v. Wilkinson*, 229 F.3d 1152 (Table), 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (holding that one isolated incident of interference with mail did not violate a plaintiff's constitutional rights) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)); *see, e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Lloyd v. Herrington*, No. 4:11-CV-P128-M, 2011 WL 6026661, at *2 (E.D. Ky. Dec. 2, 2011) (collecting cases to hold that plaintiff's allegations "that one piece of incoming legal mail was opened outside of his presence" fail to state a claim for relief under § 1983). Further, Plaintiff fails to allege prejudice as required to assert a violation of his right of access to the courts under the First Amendment. *See Truss-El v. Bouchard*, 103 F. App'x 575, 577 (6th Cir. 2004) (upholding dismissal of prisoner's claim against prison officials based on alleged interference with his legal mail where he did not demonstrate any prejudice to pending or contemplated litigation). Accordingly, Plaintiff's claim that his legal mail was opened fails to state a claim for relief under § 1983, and Plaintiff's access to the courts claims will be **DISMISSED**.

### D. Conditions of Confinement Claims

Plaintiff then claims that he has not been provided access to a commissary, and has not been allowed "to go outside for fresh air or recreation" [Doc. 1 p. 3]. Pretrial detainees held in jail are protected under the Due Process Clause of the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the same analysis which applies to Eighth Amendment protections against cruel and unusual punishment guides conditions of confinement claims for pretrial detainees under the Fourteenth Amendment Due Process Clause. *See, e.g., Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685–86 (6th Cir. 2001); *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1995); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). Thus, the Court is guided by Eighth Amendment principles in considering Plaintiff's claims.

The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46. Ultimately, the deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Id.* at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned

with "deprivations of essential food, medical care, or sanitation," or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (internal citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety, and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff first claims that he was not provided access to a commissary while detained at the CCDC [Doc. 1 p. 3]. However, as a general matter, there is no constitutional right of access to a prison commissary. *See Wolfe v. Alexander,* No. 3:11-cv-0751, 2014 WL 4897733, at *8 (M.D. Tenn. Sept. 30, 2014) (citing *Newell v. Ruth*, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014) ("[C]ommissary access is a privilege, not a right.")); *see, e.g.*, *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) (indicating that "we know of no constitutional right of access to a prison gift or snack shop"); *Adams v.*

*Hardin Cty. Det. Ctr.*, No. 3:16-CV-P29-CRS, 2016 WL 2858911, at *3 (W.D. Ky. May 16, 2016) (collecting cases to hold that "Plaintiffs have no federal constitutional right to purchase items . . . from a commissary at all"). Further, Plaintiff does not allege that the denial of access to a commissary was in retaliation for the exercise of a constitutionally protected right. Therefore, the Court finds that Plaintiff's conditions of confinement claim premised on the lack of access to a prison commissary fails to state a claim upon which relief may be granted under § 1983.

Next, Plaintiff claims that he was not given the opportunity to go outside for fresh air or recreation [Doc. 1 p. 3]. The Sixth Circuit has recognized that "outdoor recreation, in some undefined form and amount, is necessary for inmates' well–being." *Jones v. Stine*, 843 F. Supp. 1186, 1193 (W.D. Mich. 1994) (citing *Walker v. Mintzes*, 771 F.2d 920, 927–28 (6th Cir. 1985)). However, there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners. *See Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (observing that the Sixth Circuit has never set a minimum amount of outdoor time for inmates). Rather, "a total or near-total deprivation of exercise or recreational opportunity, without penological justification," impinges on an inmate's Eighth Amendment right, because "[i]nmates require regular exercise to maintain reasonably good physical and psychological health." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).

In his single-sentence allegation, however, Plaintiff fails to allege that any Defendant was responsible for the lack of access to outdoor recreation. *See Helling v.*

11

*McKinney*, 509 U.S. 25, 35 (1993) (holding a plaintiff must allege that a defendant acted in deliberate indifference to the objective risk posed by his conditions of confinement). Further, Plaintiff has failed to allege "that the denial of recreation caused him any physical injury or placed him at substantial risk of serious harm sufficient to constitute an Eighth Amendment violation." *Hardin v. Ruth*, No. 1:12–cv–30, 2012 WL 5304191, at *6 (E.D. Tenn. Oct. 25, 2012). Therefore, Plaintiff's allegations relating to the lack of access to outside recreation fail to state a claim for relief under § 1983, and Plaintiff's claims relating to the conditions of his confinement will be **DISMISSED**.

### E. Medical Deliberate Indifference Claims

Lastly, Plaintiff challenges the medical care that he received at the CCDC, alleging that he was forced to take medicine for his high blood pressure, and that he has not seen a doctor for an alleged ear infection [Doc. 1 p. 3].

As previously stated, in the case of a pretrial detainee, the Fourteenth Amendment Due Process Clause forbids officers from "unnecessarily and wantonly inflicting pain" on a pretrial detainee with "deliberate indifference" towards the detainee's serious medical needs. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). An officer's "deliberate indifference violates [this] right when the indifference is manifested by [officers] in intentionally denying or delaying access to medical care for a serious medical need." *Id.* (internal citations omitted). However, even though Plaintiff was not a convicted prisoner during the events at issue, the Court will analyze his claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of

12

convicted prisoners. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)).[1]

Therefore, to state a claim for relief under § 1983, Plaintiff must allege that Defendants were deliberately indifferent to his serious medical needs, meaning that a Defendant knew of and disregarded a substantial risk of serious harm to Plaintiff's health. *Spears v. Ruth,* 589 F.3d 249, 254 (6th Cir. 2009) (citing *Farmer v. Brennan,* 511 U.S. 825, 835–37 (1994); *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6th Cir. 2005)). "A plaintiff satisfies the subjective component by 'alleg[ing] facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). However, the subjective requirement of the Eighth Amendment is designed "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate

---

[1] On June 22, 2015, the Supreme Court held in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under a standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472–73. The Sixth Circuit has never "squarely decided whether the Fourth Amendment's objective reasonableness standard can ever apply to a plaintiff's claims for inadequate medical treatment." *Esch v. Cty. of Kent*, 699 F. App'x 509, 514 (6th Cir. 2017) (finding it unnecessary to determine whether the Fourth or Fourteenth Amendment applies because plaintiff's claims failed under both the deliberate indifference and objective reasonableness standards) (internal citations omitted). However, "[i]f the plaintiff is a pretrial detainee who has had a probable cause hearing, the Fourteenth Amendment (and by extension, the Eighth Amendment's deliberate indifference standard) governs her claims." *Id.* (citing *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010)).

indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's allegations relating to his treatment for high blood pressure fail to state a claim for relief under § 1983, as they constitute "medical malpractice claims," through the alleged "misdiagnosis of an ailment." *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Koos v. Corr. Corp. of Am.,* 63 F. App'x 796, 797 (6th Cir. 2003) ("A mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment does not state a claim under the Eighth Amendment.") (internal citations omitted). Ultimately, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *See Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995). Therefore, Plaintiff's claims relating to his treatment for high blood pressure fail to state a claim for relief, and will be **DISMISSED**.

Plaintiff also claims that he has not been seen by a doctor for an ear infection he has had since his arrival at the CCDC [Doc. 1 p. 3]. However, Plaintiff fails to allege the personal involvement of any named Defendant. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (holding a plaintiff must demonstrate the personal involvement of each defendant they seek to hold liable). In order to establish deliberate indifference, a plaintiff must "allege facts which, if true, would show that the official being sued subjectively

perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Further, Plaintiff brings suit against Claiborne County, as well as against Defendant Ray, the Sheriff of Claiborne County [Doc. 1 p. 1]. To succeed on a § 1983 claim against a municipal entity, such as Claiborne County, Plaintiff must establish that: (1) his harm was caused by a constitutional violation; and (2) the municipality itself was responsible for that violation, generally because of a policy, custom, pattern or practice of the municipal defendant that caused the Plaintiff's constitutional injury. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Additionally, a claim against a defendant in their official capacity is treated as an action against the entity which employs them. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that while "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," individuals sued in their official capacities stand in the shoes of the entity they represent) (citing *Monell*, 436 U.S. at 690 n.55).

Although Plaintiff alleges constitutional violations from his confinement in the CCDC, he has not alleged facts that indicate an established "policy" or "custom" of Claiborne County that caused his constitutional injury. *Spears*, 589 F.3d at 256;

*see Monell*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs"). Therefore, as Plaintiff fails to establish that any named Defendant acted in deliberate indifference to his health and safety, Plaintiff's claims relating to his lack of treatment for an ear infection also fail to state a claim for relief under § 1983. However, as stated below, the Court will allow Plaintiff to amend this claim to correct the noted deficiencies.

### F. Leave to Amend Complaint

Despite Plaintiff's deficiencies, the Court does not deem it appropriate to dismiss Plaintiff's complaint at this juncture. While in its present form, his complaint does not state any claim for relief against a named Defendant, it is conceivable that Plaintiff could cure this defect in the complaint if given leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires."); *see also LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding that "under Rule 15(a), a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). As a result, it is appropriate to grant Plaintiff leave to amend his complaint to correct the deficiencies noted in his claims relating to his medical treatment for an ear infection at the Claiborne County Detention Center. Specifically, Plaintiff is directed to identify the

personal involvement and knowledge of any named Defendant in the deprivation of his constitutional rights.

Plaintiff is hereby **ORDERED** to file an amended complaint—which will replace and supersede his prior complaint—**within twenty-one (21) days** of the entry of this Order. In particular, Plaintiff is **DIRECTED** to amend his complaint to name the proper Defendants, clarify the exact nature of his claims and personal involvement of each Defendant, and provide factual allegations supporting each claim. Plaintiff is **NOTIFIED** that failure to timely comply with this Order will result in the dismissal of this action for want of prosecution and failure to comply with orders of the Court. *See* Fed. R. Civ. P. 41(b).

Plaintiff's amended complaint must comply with Federal Rule of Civil Procedure 8, which provides, in relevant part, that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Accordingly, Plaintiff's amended complaint should contain only concisely stated claims for violations of civil rights, in paragraphs that are labelled and clearly identify the specific causes of action that he wishes to pursue as to each defendant and the facts supporting each such claim.[2]

---

[2] Plaintiff is further **NOTIFIED** that, under Rule 15(c), the Court may only address the merits of claims that "relate back" to the original complaint—that is, the Court can consider only those claims and allegations that "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Thus, Plaintiff is on notice that his amended complaint is not the place for Plaintiff to set forth any wrongs of a different factual or legal nature that Plaintiff has perceived subsequent to the filing of his original complaint.

The Clerk is **DIRECTED** to send Plaintiff a form § 1983 complaint which Plaintiff may use to draft this amended complaint. Additionally, the Clerk is **DIRECTED** to send Plaintiff a copy of his original complaint [Doc. 1].

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 3] is **GRANTED**;

2. Defendant Claiborne County Detention Center is **DISMISSED** as a Defendant to this action;

3. Plaintiff's claims relating to his conditions of confinement, access to the courts, and his medical treatment for high blood pressure are **DISMISSED**;

4. Plaintiff is **ORDERED** to file an amended complaint **within twenty-one (21) days** to correct the deficiencies noted with respect to his claims relating to his medical treatment for an ear infection;

5. The Clerk is **DIRECTED** to send Plaintiff a form § 1983 complaint, as well as a copy of his original complaint; and

6. Plaintiff is **INSTRUCTED** that pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of

the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13.

**IT IS SO ORDERED.**

**ENTER:**

s/ Thomas A. Varlan<br>CHIEF UNITED STATES DISTRICT JUDGE